UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| JOAN PAYNE,<br><br>      Plaintiff,<br><br>      v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of Social<br>Security,<br><br>      Defendant. | CIVIL ACTION<br>NO. 14-cv-00094-WGY |

WILLIAM G. YOUNG, U.S. District Judge[1]      September 06, 2016

**MEMORANDUM & ORDER**

**I. INTRODUCTION**

Joan Payne ("Payne") appeals from the decision of the Acting Commissioner of Social Security (the "Commissioner") finding her not disabled for the time period from January 25, 2008 to December 11, 2009.

**A. Procedural History**

Payne originally filed for disability benefits and supplemental social security income (collectively, "benefits") on March 20, 2008. Cert., Ex. 1, Documents Related Administrative Process Including Transcript Oral Hearing

---

[1] Of the District of Massachusetts, sitting by designation. ECF No. 16.

("Admin. R.") 832, ECF No. 11-10.[2]  A hearing officer[3] denied her claim on May 18, 2010, but on appeal the Medicare Appeals Council found her disabled from December 11, 2009.  Id. at 832.  Payne challenged this determination insofar as she alleged her disability onset date was in fact earlier, and the District Court of the Northern District of New York remanded her case to the Commissioner.  See J., Payne v. Astrue, 3:12-CV-00847 (N.D.N.Y. 2013), ECF No. 16.  On remand, the issue was whether Payne was disabled from January 25, 2008, to December 11, 2009 (the date after which she has already been found to be disabled).  Admin. R. 832.

The hearing officer found that Payne was not disabled during this time period, and denied her benefits.  Id. at 845.  The Medicare Appeals Council declined to review this decision, and Payne filed the instant action in January 2014 challenging the denial of benefits.  See Compl., ECF No. 1.  On May 5, 2015, the case was reassigned to this Court.  Reassignment Order, ECF No. 21.  It has been fully briefed.  See Pl.'s Br. Pursuant General Order No. 18 ("Pl.'s Mem."), ECF No. 13; Def.'s Br.

---

[2] The administrative record spans several consecutively paginated documents, filed under separate ECF numbers.  For convenience, the Court will cite to the consecutively paginated numbers and omit citations to particular ECF filings.

[3] For an explanation of the Court's use of the term "hearing officer," see Vega v. Colvin, No. CV 14-13900-WGY, 2016 WL 865221 at *1 n.1 (D. Mass. Mar. 2, 2016).

Pursuant General Order No. 18 ("Def.'s Mem."), ECF No. 17; Mot. Allow Reply Br., Ex. 1, Pl. Reply Br. ("Pl.'s Reply"), ECF No. 19-1.

**B.   Factual Background**

The relevant background facts are contained in the hearing officer's decision.  See Admin. R. 832-45.  Only certain records from the physicians who treated Payne are relevant to the legal issues before the Court, and these will be discussed as part of its analysis below.

**II.  LEGAL FRAMEWORK[4]**

---

[4] One would think that the standard of judicial review and the Social Security disability standard are, by now, so well-settled that these cases could be resolved simply by applying the established legal framework to the factual record.  Sadly, this is far from the case.

As a district judge privileged to sit in the district courts of the First, Second, and Fifth Circuits, this is an issue with which I've wrestled on more than one occasion.  For example, in Crosse v. Colvin, 73 F.Supp.3d 169, 173 (N.D.N.Y. 2014), I referenced the Second Circuit's more rigorous treating-physician rule as compared with the First Circuit's, and noted that:

> [a] recent research paper points out rather striking inconsistencies in Appeals Council reversal rates among district judges themselves and from the government's decision to appeal, as among various circuits.  Jonah J. Horwitz, Social Insecurity: A Modest Proposal for Remedying Federal District Court Inconsistency in Social Security Cases, 34 Pace L. Rev. 30, 46–51 (2014).  Such inconsistencies are, and should be, especially troubling.  See generally Frederick Schauer, Foreword: The Court's Agenda, and the Nation's, 120 Harv. L. Rev. 4 (2006) (noting throughout the discrepancy between the importance

[3]

This Court has subject matter jurisdiction to review the Commissioner's findings pursuant to 42 U.S.C. § 405(g).  The Court reviews the hearing officer's factual findings to determine whether they are supported by substantial evidence in the administrative record, and determines whether the correct legal standards were applied.  E.g., Moran v. Astrue, 569 F.3d 108, 112 (2d Cir. 2009).  "Substantial evidence" is "more than a mere scintilla," and is defined as evidence that "a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted).  The underlying five-step disability determination is well-known and will not be recited again here; for a statement of this framework, see, for example,

---

Americans place on the Social Security program and the attention it receives at the Supreme Court).

Id. at 173; See Harold Krent & Scott Morris, Inconsistency and Angst in District Court Resolution of Social Security Disability Appeals, 67 Hastings L.J. 367, 395 (2016) ("Remand rates from district court judges in the Seventh, Ninth, and Tenth Circuits almost doubled the rates within the First and Fourth Circuit. Knowing the judicial circuit in which the appeal was filed was the single most significant factor we could trace in predicting whether there would be a remand.").  Recent scholarly research has added that magistrates' remand rates are similar to that of district court judges in the same district, see Harold Krent & Scott Morris, supra, at 396, and that, in addition to doctrinal differences (such as the treating-physician rule, referenced above), "the 'culture' within [a] circuit plays a significant part" in explaining the variance in remand rates between circuits, id.  By "culture," the authors mean the extent to which the language in opinions is "hostile" or "skeptic[al]" towards hearing officers' decisions.  See id. at 397-98.

[4]

Burgess v. Astrue, 537 F.3d 117, 120 (2d Cir. 2008); 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v)).

**III. ANALYSIS**

Payne brings four challenges to the hearing officer's decision, arguing that she erred in: (1) declining to find that Payne's carpal tunnel syndrome ("carpal tunnel") and depression were severe impairments, Pl.'s Mem. 6-11; (2) failing properly to asses Payne's medical evidence, id. at 11-20; (3) omitting certain of Payne's limitations from her residual functional capacity ("RFC") determination, id. at 20-22; and (4) incorrectly asserting that there were jobs available that Payne could perform, id. at 22-23. The Court holds that the hearing officer erred in her assessment of the medical evidence, warranting a remand to re-determine Payne's RFC.

**A. Severe Impairments**

The hearing officer found that Payne's degenerative disc disease was a severe impairment, but that her carpal tunnel and depression were not. See Admin. R. 836-38. Payne argues that both her carpal tunnel and her depression should have been classified as severe impairments. See Pl.'s Mem. 6-11. The Commissioner claims that substantial evidence supports both classifications. Def.'s Mem. 8-9.

Step two of the disability analysis asks whether a claimant has "a severe medically determinable physical or mental

impairment[.]" E.g., Petrie v. Astrue, 412 F. App'x 401, 404 (2d Cir. 2011) (citing 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii)). "An impairment or combination of impairments is not severe if it does not significantly limit [a claimant's] physical or mental ability to do basic work activities[,]" where "basic work activities" are defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921.[5] If the medical evidence of an impairment "establishes only a slight abnormality which would have no more than a minimal effect on an individual's ability to work[,]" such impairment is non-severe. Cabibi v. Colvin, 50 F.Supp.3d 213, 232 (E.D.N.Y. 2014) (internal quotation marks, citations, and alterations omitted). By contrast, a medical impairment that "rises above the de minimis level" is severe for the purpose of

---

[5] The regulations list several examples of "basic work activities," including:

    (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
    (2) Capacities for seeing, hearing, and speaking;
    (3) Understanding, carrying out, and remembering simple instructions;
    (4) Use of judgment;
    (5) Responding appropriately to supervision, co-workers and usual work situations; and
    (6) Dealing with changes in a routine work setting.

20 C.F.R. § 416.921(b).

determining a claimant's entitlement to benefits. Id. (internal quotation marks, citations, and alterations omitted).

### 1. Carpal Tunnel

The hearing officer found that Payne's carpal tunnel was non-severe, asserting that Payne's treatment notes indicate that Payne's carpal tunnel became severe only after the relevant period (January 25, 2008 to December 11, 2009), see Admin. R. 837 (citing Admin. R. 794-802, 803-07), and that Payne's symptoms were "fairly tolerable" during this time, see id. (citing Admin. R. 820-23). Payne argues that Dr. Kenneth Alo in fact identified that her "fine and gross motor skills" suffered since at least 2005. See Pl.'s Mem. 7 (citing Admin. R. 247). Further, she argues, Dr. Xiao Fang even imposed limitations on her use of her hands, id. at 8 (citing Admin. R. 827-28), as did Dr. Justine Magurno, id. (citing Admin. R. 514).

None of the evidence Payne identifies undermines the hearing officer's conclusion regarding her carpal tunnel. First, the medical evidence Payne marshals in support of the limitations caused by her carpal tunnel is from the wrong time period. Dr. Fang's cited notes provide that Payne should use her hands in "[f]ine motor activity" only "[u]p to 1/3 of each working day[,]" Admin. R. 827. While this evaluation purportedly covers the period from July 28, 2008 to March 8, 2012 (the date of the visit), id. at 828, Dr. Fang's treatment

records from the period at issue focus on pain in Payne's neck, back, and hips, and not anything related to her carpal tunnel. See Admin. R. 552-572. Dr. Justine Magurno's notes, on the other hand, are the inverse: right time period, wrong substance. In a statement on September 8, 2008, she assessed that Payne had "[n]o limitations . . . for fine motor activities[.]" Id. at 514. There is thus substantial evidence to support the hearing officer's determination that Payne's carpal tunnel was not (yet) a severe impairment. Cf., e.g., Patterson v. Colvin, 24 F.Supp.3d 356, 369 (S.D.N.Y. 2014) ("Given [a doctor's] clear opinion that [claimant's medical impairment] would not affect her ability to work, together with the lack of evidence to the contrary, we find that there is substantial evidence in the record supporting the [hearing officer's] conclusion that [the claimant's medical impairment] is a non-severe impairment.").

### 2. Depression

The hearing officer found that Payne's depression was a "non-severe" impairment "because it does not result in significant work-related functional limitations." Admin. R. 838. Under the relevant regulations, a hearing officer must evaluate a claimant's depression-related functional limitations in each of four areas: "[a]ctivities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." 20 C.F.R. § 404.1520a(c)(2). For the first

three of these, a hearing officer must assign a value using a "five-point scale: None, mild, moderate, marked, and extreme." Id. § 404.1520a(c)(3). The fourth (episodes of decompensation), has a "four-point scale: None, one or two, three, four or more." Id. § 404.1520a(c)(3). A rating "in the first three functional areas as 'none' or 'mild' and 'none' in the fourth area," merits a finding of non-severity, "unless the evidence otherwise indicates that there is more than a minimal limitation in [a claimant's] ability to do basic work activities." Id. § 404.1520a(d)(1) (internal citation omitted).

The hearing officer here made these required determinations, finding Payne had mild limitations in the first three areas, Admin. R. 838-39, and no episodes of decompensation, id. at 839. She also noted that Payne was not receiving treatment for her depression, id. at 837, that she failed to testify about it at both the original hearing and the supplemental one, id. at 837, and that the consulting physician's evaluation concluded that Payne's depression "did not appear to be significant enough to interfere with her ability to function on a daily basis[,]" id. at 838 (citing id. at 519-32). Finally, the hearing officer observed that "[t]he only firm reference to depression and medications for treatment came in about August 2010[,]" after the relevant time period. Id. at 838 (citing id. at 803-19).

Payne challenges the hearing officer's determination that her depression was not severe. She points to her written notes describing symptoms of clinical depression in March of 2008. See Pl.'s Mem. 8 (citing Admin. R. 153-156). She identifies medical records from her psychotherapist from before the relevant time period, id. (citing Admin. R. 394-98), as well as some during the time period, id. (citing Admin. R. 476, 491, 498). Payne also argues that her Global Assessment Function ("GAF") score of 55 is evidence that her depression is a severe impairment. See id. at 9-10.

While the symptoms Payne reported on the survey she filled out in March 2008 are severe, see Admin. R. 153-56, these reports often conflict with what she purportedly told Dr. Long, compare, e.g., id. at 154 (stating she does not shop for groceries or cook), with id. at 506 (reporting to Dr. Long that she "does do cooking, cleaning, laundry, and shopping[,]" although she "reports difficulty with shopping."). It is within the ambit of the hearing officer's authority to resolve these conflicts. E.g., Ortiz Torres v. Colvin, 939 F.Supp.2d 172, 183 (N.D.N.Y. 2013) ("It is the hearing officer's role to weigh evidence and resolve evidentiary conflicts."). Thus, the hearing officer was entitled to credit Dr. Long's report. Payne's GAF score of 55 does not provide a basis for vacating the hearing officer's decision, either. See, e.g., Hughes v.

Comm'r of Soc. Sec., No. 1:14-CV-00208-GWC, 2015 WL 4479565, at *7 (W.D.N.Y. July 21, 2015) (affirming a finding of non-severity despite claimant's initial GAF score of 45, which was subsequently increased to "55 or 60"); Parker v. Comm'r of Soc. Sec. Admin., No. 2:10-CV-195, 2011 WL 1838981, at *6 (D. Vt. May 13, 2011) (noting that a GAF score is "only 'one factor' to consider in determining an individual's ability to perform substantial gainful activity" and that a score of 55 "indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers and co-workers)") (internal quotation marks, citation, and alterations omitted). Here, there was substantial evidence to support the hearing officer's determination, thus the Court will not disturb it.

## B. Medical Evidence

Payne next challenges the hearing officer's assessment of the medical evidence. Pl.'s Mem. 11-20. Specifically, she claims that the hearing officer ignored Dr. Alo's proffered limitations, id. at 12 (citing Admin. R. 249-50), and several of Dr. Fang's proffered limitations, see id. at 15-18.[6]

---

[6] Payne challenges several other instances in which the hearing officer discounted the opinion of a treating source, besides those discussed infra. These others, however, were adequately explained by the hearing officer and are supported by

[11]

### 1. Dr. Alo

In making her residual functional capacity ("RFC") determination -- which was that Payne "could perform sedentary work . . . with the following additional limitations: occasionally climb ramp/stairs and ladders/ropes/scaffolds; occasionally balance, stoop, kneel, crouch, and crawl; changes in position can be accommodated by the usual breaks[,]" Admin. R. 840 -- the hearing officer "granted very significant weight" to Dr. Alo's December 20, 2006 opinion, id. at 840. Payne points out, however, that the hearing officer rejected without

---

substantial evidence. For example, the hearing officer properly discredited Dr. Fang's proffered limitation as to Payne's fine motor activity on the basis of 2010 clinical findings that Payne's hand had "good strength generally[.]"  Admin. R. 842 (citing Admin. R. 820-23).  The hearing officer was also entitled to reject Dr. Fang's statement that "it was likely [Payne] would miss four days of work per month," Pl.'s Mem. 13 (citing Admin. R. 704, 842), having found that there was no evidence to support Dr. Fang's predicted absences from work, id. at 842.  Cf. Sickles v. Colvin, No. 12-CV-774 MAD/CFH, 2014 WL 795978, at *20 (N.D.N.Y. Feb. 27, 2014) (affirming discrediting of treating physician's opinion because of "internal inconsistency" between predicting substantial absences from work and allowing claimant to sit for six hours a day with one rest period per hour).
   This is not to say the hearing officer's reasoning was airtight. For example, the hearing officer asserted that Payne's hands showed "good strength generally" in 2010, and "only [a] recent increase in complaints of new symptoms." Admin. R. 842 (citing Admin. R. 820-23).  This is not a fair characterization of the report to which the hearing officer cited, which is actually three separate "re-evaluation[s]" of Payne after her May 2009 surgery and appears to be of limited relevance to Payne's condition in the time period at issue (again, January 2008 to December 2009).

explanation some of Dr. Alo's proffered restrictions, specifically that Payne avoid "bending, twisting, stooping, [or] rotating[.]"  Id. at 251.  Further, Dr. Alo issued an updated recommendation on October 11, 2007, which the hearing officer failed to discuss: this report reiterates that Payne's restrictions included "no bending/stooping/squatting[,] no standing [more than] four hours/day[,] no repetitive use of hands, [and] no lifting [more than] ten pounds[.]"  Id. at 250.

The Commissioner points out that Dr. Alo's October 2007 opinion was given "prior to the relevant time period" and that the hearing officer "did not fully accept Dr. Alo's total restriction on bending, twisting, stooping, and rotating[,]" Def.'s Mem. 10, but offers no rationale for the hearing officer's action, see id. at 10-11.  The only explanation the Court can glean for this discrepancy is the hearing officer's noting, four pages in her opinion before she discussed Dr. Alo's proffered restrictions, that Payne in July 2009 "reported that she was doing better [after her May 2009 surgery] with good strength, no focal weakness and the pain in her arms and neck was better."  Admin. R. 836 (citing Admin. R. 686-702).  In other words, maybe the hearing officer found that, after her surgery, Payne was no longer restricted in stooping, for example.  The record is far from unambiguous on this point, however.  And regardless, it is not the role of the Court to

speculate as to why the hearing officer rejected a treating source's statement. See, e.g., Pagan ex rel. Pagan v. Chater, 923 F.Supp. 547, 556 (S.D.N.Y. 1996) (a hearing officer's "failure to acknowledge relevant evidence or explain its implicit rejection is plain error").

Were Dr. Alo's proffered limitations incorporated into Payne's RFC, they likely would have been relevant to the step-five determination of whether there were jobs Payne was capable of performing. See, e.g., Ferguson v. Colvin, No. 1:12-CV-0033 MAT, 2014 WL 3894487, at *7 (W.D.N.Y. Aug. 8, 2014) (remanding where the hearing officer failed to address a medical source's proffered limitation on bending and stooping) (citing SSR 96–9p, 1996 WL 374185, at *8 (S.S.A. July 2, 1996); SSR 96–9p, 1996 WL 374185, at *8 (S.S.A. July 2, 1996) ("An ability to stoop occasionally; i.e., from very little up to one-third of the time, is required in most unskilled sedentary occupations. A complete inability to stoop would significantly erode the unskilled sedentary occupational base and a finding that the individual is disabled would usually apply").[7]  Thus, a remand is

---

[7] Here, the hearing officer found in step five that Payne could work as "an information clerk," a "telephone solicitor," or an "order filler," with Dictionary of Occupational Title numbers 237.367-022, 299.357-014, and 249.362-026, respectively. Admin. R. 844. All of the cited jobs involve "frequently . . . lift[ing], carry[ing], push[ing], pull[ing], or otherwise mov[ing] objects, including the human body." DICOT 237.367-022 (G.P.O.), 1991 WL 672188 (4th Ed. 1991); DICOT 299.357-014

necessary for the hearing officer properly to address Dr. Alo's proffered restrictions. See Burgess v. Astrue, 537 F.3d 117, 129–30 (2d Cir. 2008) ("Failure to provide . . . good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand.") (internal citations and quotation marks omitted).

### 2. Dr. Fang

Next, Payne points out Dr. Fang's proffered limitation on her reaching, Pl.'s Mem. 15 (citing Admin. R. 827-28, 842). Dr. Fang indicated that Payne was limited in "[r]eaching]" and "[h]andling" to "up to 1/3 of each working day." Admin. R. 827-28. The hearing officer's RFC did not include a reaching limitation, see id. at 840, and she did not discuss this proffered limitation, see id. at 841-42, despite having "granted significant weight" to Dr. Fang's "opinions regarding physical limitations," id. at 841. This was error, and while potentially harmless on its own, see, e.g., Gishey v. Colvin, No. 8:13-CV-1036 LEK/ATB, 2015 WL 1505674, at *9 (N.D.N.Y. Mar. 31, 2015) (citing Kennedy v. Astrue, 343 F. App'x 719, 721 (2d Cir.

---

(G.P.O.), 1991 WL 672724 (4th Ed. 1991); DICOT 249.362-026 (G.P.O.), 1991 WL 672320 (4th Ed. 1991). The hearing officer's hypothetical to the vocational expert described a claimant who could "occasionally balance, stoop, kneel, crouch or crawl." Admin. R. 862.

2009)),[8] when considered in conjunction with the hearing officer's failure to address Dr. Alo's proffered absolute restriction on "bending, twisting, stooping, [and] rotating," Admin. R. 840, discussed supra, supports a remand.

Payne also argues that the hearing officer's RFC determination was flawed, Pl.'s Mem. 20-22, and that the hearing officer erred in finding there were available jobs she could perform, id. at 22-23. In light of the errors described infra, the hearing officer will need to re-do the RFC determination, and then complete another step-five analysis.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART Payne's requested relief, see Compl., ECF No. 1, and REMANDS this case to the Commissioner for further proceedings consistent with this opinion.

---

[8] "Reaching is 'required in almost all jobs,' and a reaching limitation 'may eliminate a large number of occupations a person could otherwise do.'" Selian v. Astrue, 708 F.3d 409, 422 (2d Cir.2013) (quoting SSR 85–15, 1985 WL 56857, at *7)). "Sedentary jobs, however, 'generally do not involve overhead reaching, pushing, or pulling.'" Gishey v. Colvin, No. 8:13-CV-1036 LEK/ATB, 2015 WL 1505674, at *8 (N.D.N.Y. Mar. 31, 2015) (quoting Shupe v. Astrue, No. 07 Civ. 7961, 2010 WL 3785155, at *14 (S.D.N.Y. Aug. 3, 2010)).
 Here, Payne's attorney at the hearing asked the vocational expert to discuss the extent to which the listed jobs required, inter alia, reaching, Admin. R. 866, and the vocational expert answered that an "information clerk" involves "occasional reaching," "an order clerk" requires "frequent reaching," and a "telephone solicitor" must do "occasional reaching[.]" Id. at 866.

**SO ORDERED.**

/s/ William G. Young
WILLIAM G. YOUNG
DISTRICT JUDGE